FILED - WESTERN DIVISION
CLERK, U.S. DISTRICT COURT

MAR - 4 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**
10             **WESTERN DIVISION**

11   NIGEL LAWRENCE DALBERT,          )   No. EDCV 06-703-SGL  (AGR)
12                  Petitioner,       )
                                      )   ORDER ADOPTING MAGISTRATE
13       v.                           )   JUDGE'S REPORT AND
                                      )   RECOMMENDATION
14   GEORGE J. GIURBINO, Warden,      )
15                  Respondent.       )
     _____ )

16

17       Pursuant 28 U.S.C. § 636, the Court has reviewed the entire file de novo,

18   including the Petition, all the records and files herein, the Magistrate Judge's Report

19   and Recommendation, and the objections to the Report and Recommendation that

20   have been filed herein.  Having made a de novo determination, the Court agrees with

21   the recommendation of the Magistrate Judge.

22       IT IS ORDERED that Judgment be entered denying the Petition and dismissing

23   this action with prejudice.

24

25   DATED: _2 - 29 - 08_          _____
26                                    STEPHEN G. LARSON
                                     UNITED STATES DISTRICT JUDGE
27

28

1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        CENTRAL DISTRICT OF CALIFORNIA
10
11  NIGEL LAWRENCE DALBERT,           )    NO. EDCV 06-703-SGL (AGR)
12              Petitioner,           )
13          v.                        )
14  GEORGE J. GIURBINO, Warden,       )    REPORT AND
                                      )    RECOMMENDATION OF UNITED
15              Respondent.           )    STATES MAGISTRATE JUDGE
16                                    )
17  _____)

18        The Court submits this Report and Recommendation to the Honorable

19  Stephen G. Larson, United States District Judge, pursuant to 28 U.S.C. § 636

20  and General Order No. 05-07 of the United States District Court for the Central

21  District of California.  For the reasons set forth below, the Magistrate Judge

22  recommends that the Petition for  Writ of Habeas Corpus be denied.

23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

# I.

## SUMMARY OF PROCEEDINGS

On March 13, 2003, Petitioner was convicted by a jury in San Bernardino County Superior Court of possession of cocaine base for sale. (Petition at 2; Lodged Document ("LD") 1 at 108.) Petitioner admitted to two prior convictions. (Answer at 2; LD 1 at 105.) On August 14, 2003, Petitioner was sentenced to 25 years to life pursuant to California's Three Strikes Law. (Petition at 2; Answer at 2.)

On November 17, 2004, the California Court of Appeal affirmed the conviction and denied a consolidated petition for habeas relief. (LD 5.[1]) On January 26, 2005, the California Supreme Court denied review without explanation. (LD 7.)

On May 2, 2005, Petitioner filed a petition for habeas relief in San Bernardino County Superior Court. (LD 8.) On May 3, 2005, the court denied the petition ruling that Petitioner had offered "no proof" of his "numerous allegations." (LD 9.) On June 3, 2005, Petitioner filed a petition for habeas relief in the Court of Appeal. (LD 10.) On June 13, 2005, the Court of Appeal denied the petition without explanation. (LD 11.) On July 27, 2005, Petitioner filed a petition for habeas relief in the California Supreme Court. (LD 12.) On May 24, 2006, the California Supreme Court denied his petition without explanation. (LD 13.)

On July 3, 2006, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody in this Court in which he raised seven grounds: (1) ineffective assistance for his counsel's failure to move to suppress the drug evidence; (2) cruel and unusual punishment; (3) due process violation because of the trial court's failure to instruct the jury on the lesser included offense of simple

---

[1] On December 8, 2004, the court filed an Order Modifying Opinion and Denying Rehearing, No Change in Judgment. (Petition, Appendix.) LD 5 already has the modifications set forth in the December 8 order.

1   possession of cocaine; (4) ineffective assistance for his counsel's failure to

2   investigate the only line of defense; (5) ineffective assistance for his counsel's

3   failure to procure proof and rebut key evidence; (6) ineffective assistance for his

4   counsel's failure to refute prosecutor's misstatements of fact during the

5   sentencing hearing; and (7) ineffective assistance for his counsel's for his

6   counsel's failure to object to the trial court's reliance on an improper probation

7   report during sentencing.  (Petition at 5-7.)  On September 15, 2006, Respondent

8   filed an answer, admitting exhaustion of all claims.  Petitioner filed a reply on

9   November 20, 2006.

10          This matter was taken under submission and is now ready for decision.

11                                              II.

12                              **STATEMENT OF FACTS**

13          Below are the facts set forth in the California Court of Appeal decision on

14   direct review.  To the extent an evaluation of Petitioner's claims for relief depends

15   on an examination of the record, the Court has made an independent evaluation

16   of the record specific to Petitioner's claims for relief.

17          On November, 6, 2001, San Bernardino Police Officer Brian Lewis

18          was on bicycle patrol with Officers Cordova and Vasillis. At

19          approximately 3:50 p.m., they observed defendant, who was

20          standing in front of a vacant house, in an area known for narcotic

21          activity, and who was looking away from the officers. Officer Lewis

22          made eye contact with defendant who then turned away, waited for

23          traffic to clear, and walked across the street. Officer Lewis decided to

24          make contact with defendant. When contacted, defendant explained

25          that he had tried to visit a friend who was not home so he was

26          walking around. All of the officers were in close proximity to

27          defendant. After detecting the odor of cocaine on defendant, Officer

28          Lewis asked whether he had any illegal substances on him.

                                            3

Defendant said no, but was moving nervously and reaching into his pockets.

Ignorant of whether or not defendant had a weapon in his pockets, Officer Lewis told defendant that his actions were making him (the officer) nervous. Defendant consented to a patdown search, but when the officer discovered a large bulky item in the front waistband of defendant's shorts, defendant tensed up and attempted to pull away. Officer Lewis asked another officer to assist. Officer Reuben Cordova removed the item from defendant's waistband for officer safety. The officers discovered five baggies containing rocks of suspected cocaine base, and enclosed in 10 more plastic baggies. They also found a razor blade in defendant's wallet and a pager. It was not ascertained whether or not the pager was functional. Laboratory tests determined the baggies contained a total approximate amount of 12.6 grams of cocaine base.

Officer Lewis opined that the cocaine base was possessed for sale. He based this opinion on "[t]he amount, that's much larger than a typical user would have on them, [sic ] as well as the pager which indicates the defendant would be receiving dial-ups or calls for delivery. Also the razor blade ... is used by street level dealers to cut up their cocaine depending on the amount and buy or purchase. Also the extra baggies, which ... were going to be used for packaging and torn off as each individual sale occurs. And the fact there was no paraphernalia found on the subject which would indicate that he used it in any shape or form." The officer's opinion was further based on his training and experience. He was involved in over 700 narcotic-related arrests which involved narcotics for sales. Moreover, Officer Lewis opined that the 12.5 grams was a usable amount of

4

1   rock cocaine or cocaine base, because it could be cut or diluted for
2   use or sale in units of .03 to .2 grams. The officer estimated the
3   cocaine base was worth approximately $1,200 on the street,
4   calculated as 60 doses of 0.2 grams selling for $20 each.
5   Defendant testified in his own defense. He stated that he possessed
6   the cocaine base for his own personal use, and he had taken it from
7   the apartment he shared with a roommate. Defendant conceded that
8   he was unemployed and had no money to buy cocaine. He stated
9   that he was on his way to a location where he had smoked cocaine
10   before, and where he knew he would find the paraphernalia he
11   needed to smoke the cocaine. Defendant testified that he had used
12   rock cocaine intermittently since 1985, and was using it regularly at
13   the time of his arrest. He denied selling drugs to support his habit.
14   He stated that he had the pager with him to tell time, but it was not
15   activated.

16   (LD 5 at 2-4.)

17                                        III.

18                            **STANDARD OF REVIEW**

19         A federal court may not grant a petition for writ of habeas corpus by a

20   person in state custody with respect to any claim that was adjudicated on the

21   merits in state court unless it (1) "resulted in a decision that was contrary to, or

22   involved an unreasonable application of, clearly established Federal law, as

23   determined by the Supreme Court of the United States"; or (2) "resulted in a

24   decision that was based on an unreasonable determination of the facts in light of

25   the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d);

26   *Woodford v. Visciotti*, 537 U.S. 19, 21, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002)

27   (per curiam).

28   ///

1    "'[C]learly established Federal law' . . . is the governing legal principle or

2    principles set forth by the Supreme Court at the time the state court rendered its

3    decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed.

4    2d 144 (2003).  A state court's decision is "contrary to" clearly established

5    Federal law if (1) it applies a rule that contradicts governing Supreme Court law;

6    or (2) it "confronts a set of facts . . . materially indistinguishable" from a decision

7    of the Supreme Court but reaches a different result. *Early v. Packer*, 537 U.S. 3,

8    8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).  A state court's decision cannot be

9    contrary to clearly established Federal law if there is a "lack of holdings from" the

10   Supreme Court on a particular issue.  *Carey v. Musladin*, 127 S. Ct. 649, 654,

11   166 L. Ed. 2d 482 (2006).

12          Under the "unreasonable application prong" of section 2254(d)(1), a federal

13   court may grant habeas relief "based on the application of a governing legal

14   principle to a set of facts different from those of the case in which the principle

15   was announced." *Lockyer*, 538 U.S. at 76; *see also Woodford*, 537 U.S. at 24-26

16   (state court decision "involves an unreasonable application" of clearly established

17   federal law if it identifies the correct governing Supreme Court law but

18   unreasonably applies the law to the facts).

19          A state court's decision "involves an unreasonable application of [Supreme

20   Court] precedent if the state court either unreasonably extends a legal principle . .

21   . to a new context where it should not apply, or unreasonably refuses to extend

22   that principle to a new context where it should apply." *Williams v. Taylor*, 529

23   U.S. 362, 407, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

24          "In order for a federal court to find a state court's application of [Supreme

25   Court] precedent 'unreasonable,' the state court's decision must have been more

26   than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct.

27   2527, 156 L. Ed. 2d 471 (2003) (citation omitted).  "The state court's application

28   ///

1 | must have been 'objectively unreasonable.'" *Id.* (citation omitted); *see also Clark*
2 | *v. Murphy*, 331 F.3d 1062, 1068 (9th Cir.), *cert. denied*, 540 U.S. 968 (2003).
3 |       "Factual determinations by state courts are presumed correct absent clear
4 | and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated
5 | on the merits in a state court and based on a factual determination will not be
6 | overturned on factual grounds unless objectively unreasonable in light of the
7 | evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v.*
8 | *Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *see also*
9 | *Mitleider v. Hall*, 391 F.3d 1039, 1046 (9th Cir. 2004), *cert. denied*, 545 U.S. 1143
10 | (2005).
11 |       In applying these standards, this Court looks to the last reasoned State
12 | court decision. *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006).  To the
13 | extent no such reasoned opinion exists, as when a state court rejected a claim in
14 | an unreasoned order, this Court must conduct an independent review to
15 | determine whether the decisions were contrary to, or involved an unreasonable
16 | application of, "clearly established" Supreme Court precedent. *Delgado v. Lewis*,
17 | 223 F.3d 976, 982 (9th Cir. 2000).  If the state court declined to decide a federal
18 | constitutional claim on the merits, this Court must consider that claim under a *de*
19 | *novo* standard of review rather than the more deferential "independent review" of
20 | unexplained decisions on the merits authorized by *Delgado*. *Lewis v. Mayle*, 391
21 | F.3d 989, 996 (9th Cir. 2004) (standard of *de novo* review applicable to claim
22 | state court did not reach on the merits).

**IV.**

**DISCUSSION**

A.    **GROUND ONE: <u>Ineffective Assistance - Suppression of</u>**
                **<u>Evidence</u>**

27 |      *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674
28 | (1984), is the "clearly established Federal law."  To succeed on a claim of

7



1  ineffective assistance of trial counsel, Petitioner must demonstrate that his

2  attorney's performance was deficient and that the deficient performance

3  prejudiced the defense. *Id.* at 687; *Wiggins*, 539 U.S. at 521.  The petitioner

4  bears the burden of establishing both components.  *Williams*, 529 U.S. at 390-91;

5  *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S. Ct. 746, 145 L. Ed. 2d 756

6  (2000).  "Deficient performance is performance which is objectively unreasonable

7  under prevailing professional norms."  *Hughes v. Borg*, 898 F.2d 695, 702 (9th

8  Cir. 1990) (citing *Strickland*, 466 U.S. at 688).  Prejudice "focuses on . . . whether

9  counsel's deficient performance renders the results of the trial unreliable or the

10  proceeding fundamentally unfair."  *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.

11  Ct. 838, 122 L. Ed. 2d 180 (1993); *Williams*, 529 U.S. at 393.  "[T]here is no

12  reason for a court deciding an ineffective assistance claim ... to address both

13  components of the inquiry if the defendant makes an insufficient showing on one."

14  *Strickland*, 466 U.S. at 697.

15       In *Stone v. Powell*, 428 U.S. 465, 481-82, 96 S. Ct. 3037, 49 L. Ed. 2d

16  1067 (1976), the Supreme Court held that when "the State has provided an

17  opportunity for full and fair litigation of a Fourth Amendment claim, the

18  Constitution does not require that a state prisoner be granted federal habeas

19  corpus relief on the ground that evidence obtained in an unconstitutional search

20  or seizure was introduced at his trial."  However, in *Kimmelman v. Morrison*, 477

21  U.S. 365, 375, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986), the court held that a

22  Sixth Amendment claim of ineffective assistance for "counsel's failure to litigate a

23  Fourth Amendment claim competently" is viable on collateral review.  For such a

24  claim to be successful, a petitioner must prove that "counsel's representation fell

25  below an objective standard of reasonableness," that "his Fourth Amendment

26  ///

27  ///

28  ///

8



1  claim is meritorious and that there is a reasonable probability that the verdict

2  would have been different absent the excludable evidence."[2]  *Id.*

3      Petitioner contends that his counsel was ineffective in failing to move to

4  suppress the cocaine base evidence seized by police after the patdown search.

5  (Petition, Ex. A at 6-21.)  The California Court of Appeal's decision, which is the

6  last reasoned decision under *Davis*, was not an unreasonable application of

7  Supreme Court law nor an unreasonable determination of the facts.  The court

8  was "unable to conclude that a motion to suppress evidence would have been

9  successful." (LD 5 at 10.)

10     The Court of Appeal broke down the alleged Fourth Amendment claim into

11  three police actions and examined each:  (1) the initial detention of Petitioner, (2)

12  the patdown search, and (3) the seizure of the bundle of baggies of cocaine base.

13  (*Id.* at 5-10.)  Brian Lewis, the police officer who initially stopped Petitioner, patted

14  him down, and seized the cocaine from him,[3] testified about the reasons for his

15  actions. (LD 1 at 24-28; LD 2 at 16-44.)  The court concluded that each of Officer

16  Lewis's actions was constitutional. (LD 5 at 5-10.)  The court noted trial counsel's

17  explanation that he did not bring a motion to suppress because he did not believe

18  "'there was any issue with respect to the legality of the seizure or the search.'" (*Id.*

19  at 10; LD 3, Ex. B.)

20          **1.    Initial Detention**

21     The state court and Petitioner agree that the legal standard for stopping

22  him is whether the police had reasonable suspicion that Petitioner was involved in

23  _____

24  [2] Petitioner confuses part of the legal standard.  In his reply, he states that
    "[a] suppression motion would have, at least, a reasonable probability of
25  success." (Reply at 12.)  However, "reasonable probability" is the standard for
    evaluating prejudice, not for evaluating the merits of the suppression motion.  *See*
26  *Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1170 (9th Cir. 2003) ("petitioner must
    show that (1) the overlooked motion to suppress *would have been meritorious*")
27  (emphasis added); *see also Kimmelman*, 477 U.S. at 382 ("a meritorious Fourth
    Amendment issue is necessary to the success of a Sixth Amendment claim").

28     [3] Officer Lewis was assisted by two other police officers.  (LD 2 at 21.)



criminal activity.  (LD 5 at 6; Petition, Ex. A at 8-9.)  *United States v. Sokolow*,
490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989) ("Our decision, then, turns
on whether the agents had a reasonable suspicion that respondent was engaged
in wrongdoing when they encountered him on the sidewalk.").

A court looks at the "totality of the circumstances" to determine whether the
police acted reasonably.  (LD 5 at 7; Petition, Ex. A at 8.)  *See Sokolow*, 490 U.S.
at 7 (in evaluating totality of the circumstances, law enforcement officers may rely
on common-sense conclusions about human behavior).  Several factors together
may amount to reasonable suspicion even though "[a]ny one of these factors is
not by itself proof of any illegal conduct" and each factor may be innocent when
viewed separately. *Id.* at 9-10; *see United States v. Arvizu*, 534 U.S. 266, 274,
122 S. Ct. 744, 151 L. Ed. 2d 740 (2002).  Although a mere hunch is insufficient,
"the likelihood of criminal activity need not rise to the level required for probable
cause, and it falls considerably short of satisfying the preponderance of the
evidence standard." *Id.* at 274.  Law enforcement officers may "draw on their
own experience and specialized training to make inferences from and deductions
about the cumulative information available to them." *Id.* at 273.

According to the California Court of Appeal, the totality of the
circumstances that made the stop reasonable were:  (1) Petitioner was standing
in front of a vacant house, which Officer Lewis felt was "very suspicious"; (2) a
person standing in front of a vacant house "could be a lookout for someone inside
if they are burglarizing it or vandalizing it"; (3) a person standing in front of a
vacant house could be selling narcotics and intentionally standing in front of a
vacant house to "disassociate[e] themselves with the house.  Instead of selling
from their own house, they do it in front of a vacant house so it's not associated to
them."; and (4) when Officer Lewis made eye contact with Petitioner, "he
immediately started to walk southbound across the street."  (LD 5 at 6-7; LD 2 at
25-27.)

1    The Court of Appeal's decision was not an unreasonable application of

2    clearly established federal law and was not an unreasonable determination of the

3    facts.  Petitioner's argument that each factor may have an innocent explanation

4    (Petition, Ex. A at 11) is clearly insufficient.  *Arvizu*, 534 U.S. at 274; *Sokolow*,

5    490 U.S. at 9-10.  "A determination that reasonable suspicion exists, however,

6    need not rule out the possibility of innocent conduct." *Arvizu*, 534 U.S. at 277.

7    Here, Petitioner does not address the totality of factors relied upon by the

8    Court of Appeal to find the stop constitutional.  Instead, Petitioner isolates certain

9    factors.  Petitioner acknowledges that flight from the police may "contribute to a

10   reasonable suspicion of criminal activity," but he contends his walking away does

11   not constitute flight.  (Petition, Ex. A at 11.)  However, evidence of flight is not

12   required.[4]  *See Arvizu*, 534 U.S. at 276 (failure to acknowledge sighted law

13   enforcement officer may be considered under totality of the circumstances).[5]  The

14   Court of Appeal was correct that the manner in which a person avoids police

15   contact is relevant to whether a person's conduct is suspicious.  (LD 5 at 6-7

16   (citing to *People v. Souza*, 9 Cal. 4th 224, 234-35 (1994).)  Petitioner also argues

17   that being in an "area known for narcotic activity" alone is not "'sufficient to justify

18   interference with an otherwise innocent-appearing citizen.'" (Petition, Ex. A 10-11

19   (quoting from *Souza*, 9 Cal. 4th at 241).)  Again, however, being in an area known

20   for narcotic activity may properly be considered in assessing reasonable

21

22       [4]  Petitioner's reliance on California law is insufficient for federal habeas
23   relief.  Petitioner cites to *People v. Moore*, 69 Cal. 2d 674, 683, 72 Cal. Rptr. 800
     (1968), *disapproved on other grounds by People v. Thomas*, 19 Cal. 3d 630, 641
24   n.8 (1977) (fact that defendant in phone booth turned his back on police
     insufficient to detain him).  In any event, the facts of *Moore* are distinguishable.

25       [5]  In his reply, Petitioner also argues he was not walking away from the
26   police, but in reality walking toward them.  Petitioner was on the northwest corner
     of North G and Spruce Streets.  (LD 2 at 24.)  The police were bicycling north on
27   North G Street.  (*Id.*)  When Petitioner noticed the police, they were 50 yards
     south of him and on the east side of Spruce.  (*Id.*)  Petitioner's assertion that he
28   walked toward the police is not accurate.  To walk toward the police, he would
     have had to cross Spruce Street to the east, which he did not do.

1    suspicion.  *See Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 145 L. Ed.

2    2d 570 (2000) ("officers are not required to ignore the relevant characteristics of a

3    location in determining whether the circumstances are sufficiently suspicious to

4    warrant further investigation"); *Arvizu*, 534 U.S. at 277 (defendant's presence on

5    route used by smugglers); *Adams v. Williams*, 407 U.S. 143, 144, 147-48, 92 S.

6    Ct. 1921, 32 L. Ed. 2d 612 (1972) (high-crime area).  Officer Lewis testified that

7    the area in which Petitioner was stopped was "an area of high narcotic activity or

8    trafficking."  (LD 2 at 44.)  The Court of Appeal did not use this factor as one of its

9    bases for finding that the stop was reasonable.  Yet it provides additional support

10    for its conclusion that the stop was constitutional.

### 2.    Patdown Search

12       The Court of Appeal found that the search was constitutional and, in any

13    event, Petitioner consented to it.  Again, Petitioner agrees with the Court of

14    Appeal as to the legal standard, that "a police officer may conduct a patdown

15    search for weapons when the officer has reason to believe, based on the totality

16    of the circumstances, that the suspect is armed and dangerous."  (LD 5 at 8;

17    Petition, Ex. A at 12.)  *Terry v. Ohio*, 392 U.S. 1, 26, 88 S. Ct. 1868, 20 L. Ed. 2d

18    889 (1968).  "The officer need not be absolutely certain that the individual is

19    armed; the issue is whether a reasonably prudent man in the circumstances

20    would be warranted in the belief that his safety or that of others was in danger."

21    *Id.* at 27.  "And in determining whether the officer acted reasonably in such

22    circumstances, due weight must be given, not to his inchoate and

23    unparticularized suspicion or 'hunch,' but to the specific reasonable inferences

24    which he is entitled to draw from the facts in light of his experience."  *Id.*  A

25    protective search "must be strictly 'limited to that which is necessary for the

26    discovery of weapons which might be used to harm the officer or others nearby.'"

27    *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S. Ct. 2130, 124 L. Ed. 2d 334

28    (1993) (quoting *Terry*, 392 U.S. at 26).

1    The Court of Appeal found the following reasons for the patdown search:

2    (1) Petitioner reached into "his waistband area shorts pockets"; (2) Officer Lewis

3    asked him not to do that and told Petitioner it was making him (the officer)

4    nervous; (3) Officer Lewis told defendant that he would like to conduct a patdown

5    instead of defendant putting his hands in his pants, and asked whether that would

6    be okay; (4) Defendant responded that it would; (5) while conducting the

7    patdown, Officer Lewis felt a large bulk in the front waistband of the defendant's

8    shorts; (6) defendant tensed up and attempted to pull away and separate his

9    hands; (7) Officer Lewis asked Officer Cordova to assist, and Officer Cordova

10   pulled out a large clump of plastic baggies; and (8) burglary and drug-dealer

11   suspects often have weapons.  (LD 5 at 8; LD 2 at 28-30.)

12       Petitioner contends first that his nervousness "does not justify a search."

13   (Petition, Ex. A at 13.)  However, the Court of Appeal said nothing about

14   Petitioner's nervousness, only Officer Lewis's.  Second, Petitioner contends that

15   his reaching into his pockets did not justify a search because it was in response

16   to Officer Lewis's asking him if he had anything illegal on him.  (*Id.* at 13-14.)

17   However, there is no testimony in the record to indicate that Petitioner reached

18   into his pockets simply "to display the contents of his pockets" to Officer Lewis, as

19   Petitioner contends.  (*Id.*)  As discussed above, Petitioner's argument that there is

20   an innocent explanation for his behavior is clearly insufficient.[6]  *Arvizu*, 534 U.S.

21   at 274; *Sokolow*, 490 U.S. at 9-10.

### 3.    Seizure of Cocaine Base

23       Petitioner argues that the search "exceeded the permissible scope of a

---

25    [6]  In addition, the Court of Appeal found that Petitioner consented to the
search.  (LD 5 at 9.)  An independent review of the record indicates that a finding
26   of consent was not objectively unreasonable.  Officer Lewis told Petitioner "I
would feel more comfortable if I could pat him down instead of him putting his
27   hands into his pants, and I asked him if that would be okay.  He said sure."  (LD 2
at 28.)  Petitioner's argument that the officer's "expressed preference that he pat
28   [Petitioner] down" was not a request but a "command" (Petition, Ex. A at 15) is
insufficient in light of the testimony in the record.

search for weapons." (Petition, Ex. A at 16.)  Officer Lewis testified that while patting him down, he "felt a large bulk in the front waistband of his shorts."  (LD 2 at 29.)  Petitioner then "tensed up" and "attempted to pull away from me and separate his hands" (Petitioner's hands had been placed together behind his back).  (*Id.* at 28-29.)  Because Officer Lewis did not know what the "large bulge" was, he feared for "officer safety" and asked one of the other officers "to remove that from his waistband."  (*Id.* at 30.)  Based on this record, the Court of Appeal found that the following circumstances provided probable cause to remove the object:  (1) Petitioner was in an area known for narcotic activity, (2) his body emitted an odor of cocaine, and (3) Officer Lewis's experience in narcotics developed his "tactile perceptions."  (LD 5 at 10.)  As the Court of Appeal explained, the Fourth Amendment does not require an officer "to ignore" contraband found during a search for weapons.  (*Id.* (citing to *Michigan v. Long*, 463 U.S. 1032, 1050, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983).)

     The Court of Appeal's decision was not an unreasonable application of clearly established federal law and was not an unreasonable determination of the facts.  Although Petitioner argues that "[t]here is no indication Officer Lewis believed the 'bulge' he felt was a weapon" (Petition, Ex. A at 17), Petitioner is incorrect.  Officer Lewis testified that he did not know what the large bulk was and that he feared for officer safety.  (LD 2 at 30.)  Accordingly, this is not a case in which the officer concluded that defendant's pocket or waistband contained no weapon.[7]  *Dickerson*, 508 U.S. at 377-78 ("officers continued exploration of respondent's pocket after having concluded that it contained no weapon" exceeded scope of *Terry* search).  In *Dickerson*, the Supreme Court held that

---

[7]  Petitioner's reliance on California law is insufficient for federal habeas relief.  Petitioner's citation to *People v. Collins*, 1 Cal. 3d 658, 83 Cal. Rptr. 179 (1970), is unavailing.  In *Collins*, the police felt "a little lump," which was a "soft object" and which turned out to be a plastic bag of marijuana.  *Id.* at 660, 662, 664.  By contrast, what Officer Lewis felt was a "large bulk" and thus more likely to be a weapon of some kind.  (LD 2 at 29.)

during a lawful patdown, if an officer "feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Id.* at 375-76 (footnote omitted); *see United States v. Hartz*, 458 F.3d 1011, 1018 (9th Cir. 2006) (officer testified he feared golf-ball-sized cellophane bundle wrapped in duct tape could be or could conceal a weapon).

Petitioner's claim fails.

**B.    GROUND TWO: <u>Cruel or Unusual Punishment</u>**

In evaluating an Eighth Amendment claim challenging a sentence for a term of years, "[a] gross disproportionality principle" applies. *Lockyer v. Andrade*, 538 U.S. 63, 72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The "precise contours" of the principle are "unclear"; however, they apply "only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73. "The gross proportionality principle reserves a constitutional violation for only the extraordinary case." *Id.* at 77.

California's Three Strikes law was "designed to increase the prison term of repeat felons." *Ewing v. California*, 538 U.S. 11, 15, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003) (citation and internal quotation marks omitted). Under the Three Strikes law:

> "[w]hen a defendant is convicted of a felony, and he has
> previously been convicted of one or more prior felonies
> defined as 'serious' or 'violent' [under California law],
> sentencing is conducted pursuant to the three strikes law. . .
> . [¶]  . . . If the defendant has two or more prior 'serious' or
> 'violent' felony convictions, he must receive 'an
> indeterminate term of life imprisonment.'"

1   *Id.* at 15-16 (citations omitted).  While the prior "strike" convictions must be for

2   "serious" or "violent" felonies, "any felony can constitute the third strike, and thus

3   can subject a defendant to a term of 25 years to life in prison." *Andrade*, 538

4   U.S. at 67.

5          The California Court of Appeal concluded that the Supreme Court has held

6   that "California's Three Strikes law does not violate the Eighth Amendment's

7   prohibition on cruel and unusual punishments." (LD 5 at 14.)  The Court of

8   Appeal's decision is not objectively unreasonable in Petitioner's case.  In *Lockyer*,

9   the petitioner's third strike was based on theft of about $150 worth of videotapes.

10  *Lockyer*, 538 U.S. at 66.  The first and second strikes were first-degree residential

11  burglaries.  *Id.* at 68.  On collateral review, the court found that the petitioner was

12  not entitled to relief based on the Eighth Amendment.

13         In *Ewing*, on direct review, the Supreme Court again upheld California's

14  Three Strikes Law against an Eighth Amendment claim.  Ewing's third strike was

15  stealing golf clubs with a value of about $1,200.  538 U.S. at 17-18.  His earlier

16  strikes consisted of three burglaries and a robbery.  *Id.* at 19.  As the court

17  explained, "When the California Legislature enacted the three strikes law, it made

18  a judgment that protecting the public safety requires incapacitating criminals who

19  have already been convicted of at least one serious or violent crime.  Nothing in

20  the Eighth amendment prohibits California from making that choice." *Id.* at 25.

21         Against this legal landscape, Petitioner argues that his conviction of

22  possession cocaine base for sale, coupled with two prior robberies, should be

23  treated differently because his latest conviction was "passive in nature, and arose

24  from (sic) directly from the addiction." (Petition, Ex. A at 22.)  Petitioner also

25  argues that Andrade had served three prison terms and had escaped from

26  federal prison.  (Reply at 24.)  Petitioner offers no support that any of these

27  distinctions is material to his claim of unconstitutionality.

28  ///

1          Petitioner also argues that his case is similar to *Ramirez v. Castro*, 365

2    F.3d 755 (9th Cir. 2004), in which the Ninth Circuit afforded habeas relief based

3    on an Eighth Amendment challenge to California's Three Strikes Law.  In

4    *Ramirez*, the petitioner was convicted of shoplifting a $200 VCR.  *Id.* at 768.  His

5    criminal history consisted of two 1991 convictions for second-degree robbery, for

6    which he was sentenced to one year in county jail and three years probation.  *Id.*

7    *Ramirez* is distinguishable from Petitioner's case.  First, Ramirez's conviction was

8    for stealing a VCR, whereas Petitioner was convicted of possession cocaine base

9    for sale.  *Ramirez* distinguished itself from *Harmelin v. Michigan*, 501 U.S. 957,

10   994-95, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991), because Ramirez's crime was

11   a "nonviolent petty theft" as opposed to a drug crime.  *Ramirez*, 365 F.3d at 768.

12   Harmelin was convicted of possession of over one and one-half pounds of

13   cocaine, which the Supreme Court found "threatened to cause grave harm to

14   society."  *Harmelin*, 501 U.S. at 1002.  In fact, the court found Harmelin's

15   contention "that his crime was nonviolent and victimless . . . is false to the point of

16   absurdity."  *Id.*  "Possession, use, and distribution of illegal drugs represent 'one

17   of the greatest problems affecting the health and welfare of our population.'"  *Id.*

18   (citation omitted).  Thus, the Supreme Court upheld a sentence of life

19   imprisonment without the possibility of parole.

20          Although Petitioner did not possess as much cocaine as Harmelin, he

21   possessed a sufficient amount for the jury to find that he possessed it not just for

22   his own use but for sale.  Moreover, as *Harmelin* found, even simple use of

23   cocaine affects "the health and welfare of our population."  *Id.*  Petitioner's

24   contention that his crime was "passive" is clearly contradicted by *Harmelin*.

25          Under these circumstances, the Supreme Court's decisions in *Ewing*,

26   *Andrade*, *Lockyer*, and *Harmelin* compel the conclusion that Petitioner's sentence

27   was not grossly disproportionate to his crime in light of his criminal history.  The

28   ///

state court decision was neither contrary to, nor an unreasonable application of, clearly established federal law.  Petitioner's claim fails.

**C.    GROUND THREE: Failure to Instruct Jury on Lesser Offense**

Petitioner contends that the trial court should have on its own instructed the jury that it could find Petitioner guilty of a lesser included offense to the one charged.  (Petition, Ex. A at 25.)

Respondent argues that failure to instruct on a lesser included offense in a noncapital case does not present a federal question.  (Answer at 27.)  In *Turner v. Marshall*, 63 F.3d 807 (9th Cir. 1995), *overruled on other grounds by Tolbert v. Page*, 182 F.3d 677 (9th Cir. 1999), the court noted that pursuant to *Beck v. Alabama*, 447 U.S. 625, 638, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980), "failure to instruct on a lesser included offense in a *capital* case would be constitutional error if there were evidence to support the instruction."  *Turner*, 63 F.3d at 818-19 (emphasis in original).  However, "[t]here is no settled rule of law on whether *Beck* applies to noncapital cases." *Id.* at 819.  The Ninth Circuit has not specifically addressed the issue of whether to extend *Beck* but "has declined to find constitutional error arising from the failure to instruct on a lesser included offense in a noncapital case." *Id.* (citing to *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984); *see also Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("Under the law of this circuit, the failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question").

According to *Turner*, there is an intercircuit split on the issue.  *Turner*, 63 F.3d at 819.  The Tenth and Eleventh Circuits have found no constitutional right in noncapital cases, whereas the Third and Sixth Circuits have extended *Beck* to noncapital cases; and the First and Seventh Circuits have applied *Beck* only "to prevent a 'fundamental miscarriage of justice.'"  *Id.*  Finally, *Turner* held that "any

///

1  finding of constitutional error would create a new rule, inapplicable to the present

2  case under *Teague*." *Id.*

3        This Court may not grant relief on a "claim that was adjudicated on the

4  merits in State court proceedings unless the adjudication of the claim resulted in

5  a decision that was contrary to, or involved an unreasonable application of,

6  clearly established Federal law, *as determined by the Supreme Court of the*

7  *United States*." 28 U.S.C. § 2254(d)(1) (emphasis added).  Such "clearly

8  established" Supreme Court precedent is absent.  *See Keeble v. United States*,

9  412 U.S. 205, 213, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973) (The Supreme Court

10  has "never explicitly held that the Due Process Clause of the Fifth Amendment

11  guarantees the right of a defendant to have the jury instructed on a lesser

12  included offense").  "A federal court may not overrule a state court for simply

13  holding a view different from its own, when the precedent from this Court is, at

14  best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17, 124 S. Ct. 7, 157 L. Ed.

15  2d 263 (2003) (per curiam).  Thus, "[a]lthough lower federal court and state court

16  precedent may be relevant when that precedent illuminates the application of

17  clearly established federal law as determined by the United States Supreme

18  Court, if it does not do so, it is of no moment." *Casey v. Moore*, 386 F.3d 896,

19  907 (9th Cir. 2004), *cert. denied*, 545 U.S. 1146 (2005).

20        This claim does not present a federal question.  Petitioner's claim fails.

21        **D.     GROUND FOUR: <u>Ineffective Assistance - Failure to Investigate</u>**

22        As outlined in Ground One, the clearly established federal law for

23  evaluating this claim is *Strickland*.  Because this ground was denied by the

24  California Supreme Court in an unreasoned decision (LD 12 and 13), the Court

25  has conducted an independent review to determine whether the denial was

26  contrary to, or involved an unreasonable application of, "clearly established"

27  Supreme Court precedent. *Delgado*, 223 F.3d at 982.

28  ///

1   Petitioner contends that his trial counsel was ineffective in the following

2   ways:  (1) counsel failed to interview Petitioner about the events of November 6,

3   2001, the date on which Petitioner was arrested; (2) counsel failed to investigate

4   Petitioner's history of drug addiction; (3) counsel failed to interview (a) Petitioner's

5   parole officer, (b) Petitioner's aunt Barbara Davis, (c) Petitioner's aunt Barbara

6   Adams, and (d) Petitioner's brother,[8] all of whom could have testified about

7   Petitioner's long history of drug abuse; (4) counsel failed to interview Otis

8   Simpson, Petitioner's roommate, from whom Petitioner stole cocaine base.

9   (Petition, Ex. A at 29-30.)

10   Defense counsel has a "duty to make reasonable investigations or to make

11   a reasonable decision that makes particular investigations unnecessary."

12   *Strickland*, 466 U.S. at 691.  "[A] particular decision not to investigate must be

13   directly assessed for reasonableness in all the circumstances, applying a heavy

14   measure of deference to counsel's judgments."  *Id.*  When an attorney has

15   decided not to investigate because of reasonable tactical evaluations, his or her

16   performance is not constitutionally deficient.  *Siripongs v. Calderon (Siripongs II)*,

17   133 F.3d 732, 734 (9th Cir.), *cert. denied,* 525 U.S. 839 (1998).  The duty to

18   investigate "does not necessarily require that every conceivable witness be

19   interviewed."  *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995)

20   (citations omitted), *cert. denied*, 517 U.S. 1111 (1996).  "A claim of failure to

21   interview a witness . . . cannot establish ineffective assistance when the person's

22   account is otherwise fairly known to defense counsel."  *Eggleston v. United*

23   *States*, 798 F.2d 374, 376 (9th Cir. 1986) (citation omitted).  "[I]neffective

24   assistance claims based on a duty to investigate must be considered in light of

25   the strength of the government's case."  *Bragg v. Galaza*, 242 F.3d 1082, 1088

26   (9th Cir. 2001) (citation omitted).

27   _____

28   [8] Petitioner states that his brother also could have testified about
conversations he had with Otis Simpson.



Federal habeas review must be "highly deferential," avoid "the distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Petitioner cannot show any deficiency or prejudice with respect to counsel's alleged failure to interview Petitioner. Petitioner was questioned by his counsel and cross-examined by the prosecutor as to what transpired on November 6, 2001.[9] (LD 2 at 111-16, 122.) For the reasons set forth under Ground One, the state court's ruling as to the propriety of Petitioner's detention and search was not contrary to clearly established law and was not an unreasonable determination of the facts. Any deficiency by counsel would not have changed the outcome of the proceeding. *See Strickland*, 466. U.S. at 694.

Petitioner contends that his counsel should have investigated and presented witnesses that could have corroborated his testimony that he was a cocaine addict and had stolen cocaine base from his roommate. Petitioner's argument is insufficient to prove deficient performance by counsel or prejudice.

The crime of possession of cocaine base for sale requires proof of five elements. (LD 2 at 153-54.) Petitioner's testimony at trial did not dispute the existence of the first three elements – that Petitioner exercised control over cocaine base, knew of its presence, and knew of its nature as a controlled substance. (*See id.* at 113-18, 123, 154.) Nor did there appear to be any dispute that the amount of cocaine base was sufficient for sale or consumption (fourth element). (*Id.* at 115, 154.)

///

---

[9] Petitioner does not explain why his testimony at trial did not contain the information in his reply declaration in this Court. (*Compare* LD 2 at 111-16, 122 *with* Declaration of Nigel Lawrence Dalbert at 2-3, filed November 20, 2006 ("Dalbert Decl.").) Nor does Petitioner explain why he did not disclose the information to counsel during their conversations about a possible motion to suppress evidence. (Dalbert Decl. at 2.)

1    Therefore, the key issue is the fifth element requiring that Petitioner

2    possessed the cocaine base with the specific intent to sell. (*Id.* at 154.) The

3    prosecutor's closing argument did not dispute that Petitioner stole the cocaine

4    base from his roommate or that Petitioner had a drug problem. (*Id.* at 164-65.)

5    On the contrary, the prosecutor relied on both facts to argue that Petitioner had a

6    motive to sell cocaine base to pay back his roommate or buy drugs in the future.

7    (*Id.* at 164-65, 174-75.) Defense counsel argued that Petitioner was not engaged

8    in any business transactions with anyone at the time of his arrest, had no money

9    (which was inconsistent with a purported cocaine salesman), and had no access

10   to telephones in the area. (*Id.* at 167-70.) Defense counsel further noted that it

11   was undisputed that Petitioner could have consumed 12.61 grams of cocaine

12   base.[10] (*Id.* at 171.) Defense counsel referred to Petitioner's testimony that he

13   never sold cocaine base. (*Id.* at 126-28, 171.)

14   Under these circumstances, Petitioner cannot establish a reasonable

15   probability that the result of the trial would have been different had his counsel

16   introduced corroborating testimony that he was a drug addict and had stolen

17   cocaine base from his roommate.[11] *Strickland*, 466 U.S. at 694; *Williams*, 529

18   U.S. at 391. Nor can Petitioner show that the result of the trial was unreliable or

19   that the trial was fundamentally unfair. *Williams*, 529 U.S. at 393 n.17; *Lockhart*,

20

21   [10] According to Petitioner's testimony, the cocaine was for his personal use
     that day. (LD 2 at 115.) If he had enough cocaine, he would smoke about .1

22   gram every 15 minutes. At that rate and assuming non-stop smoking, Petitioner
     would complete smoking the 12.6 grams in 31.5 hours.

23   [11] Petitioner does not explain how his counsel could have obtained
     incriminating testimony from his roommate that the cocaine base belonged to

24   him. It is pure speculation on Petitioner's part that his roommate would have
     testified favorably. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir.) ("Conclusory

25   allegations which are not supported by a statement of specific facts do not
     warrant habeas relief."), *cert. denied sub nom. James v. White*, 513 U.S. 935

26   (1994); *see also Bean v. Calderon*, 163 F.3d 1073, 1082 (9th Cir. 1998)
     (petitioner "offers no concrete support for his speculation" regarding his

27   ineffective assistance claim), *cert. denied*, 528 U.S. 922 (1999). Moreover, any
     testimony from Petitioner's brother about a phone call between the brother and

28   the roommate would have been inadmissible as hearsay. (Petition, Ex. F.)

22

506 U.S. at 369.  Corroborating evidence that Petitioner was a drug addict and had stolen the cocaine base from his roommate was, at best, ambiguous evidence that the prosecutor could and did use against Petitioner.  Defense counsel could reasonably conclude that such evidence would not materially aid Petitioner's defense.  *See Darden v. Wainwright*, 477 U.S. 168, 186-87, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (petitioner did not overcome presumption of sound trial strategy when counsel failed to introduce evidence that had potential to hurt as well as help defense); *see also Lankford v. Arave*, 468 F.3d 578, 583 (9th Cir. 2006) (federal court must refrain from second-guessing counsel's strategies), *cert. denied*, 128 S. Ct. 206 (2007).

For these reasons, Petitioner's claim fails.

**E.      GROUND FIVE:  <u>Ineffective Assistance - Failure to Present Evidence</u>**

As outlined in Ground One, the clearly established federal law for evaluating this claim is *Strickland*.  Petitioner argues that his counsel failed to introduce the following evidence or testimony:  (1)  Paycheck stubs; (2) proof the pager was not activated; (3) his car registration; (4) the key to his apartment; (5) the clothes Petitioner was wearing on the date of his arrest; (6) the clump of baggies in their original state; (7) the investigative report (Petition, Ex. G); (8) witness affidavits (Petition, Exs. C-F); (9) testimony from a drug counselor (Petition, Ex. H); (10) expert testimony regarding drug dealers and users, and (11) expert testimony as to the value of the cocaine.  (Petition, Ex. A at 34-36.)

**1.      Paycheck Stubs**

The police seized a check cashing card from Petitioner on the day of his arrest, which Officer Lewis identified, and which was introduced into evidence without objection.  (LD 2 at 37, 109.)  There was no testimony about the card other than its identification.

///

1        Petitioner argues that, in her closing, the prosecutor stated: "But we know

2 he [Petitioner] has stole in the past.  If he doesn't have a job now, maybe he's

3 cashing fraudulent checks.  I don't know." (*Id.* at 174.)  Petitioner contends that

4 the prosecutor was referring to the check cashing card, and that the inference he

5 was using the check cashing card was prejudicial. (Petition, Ex. A at 32.)

6 Petitioner argues his counsel should have introduced paycheck stubs from a

7 month before the arrest (and before he was fired). (*Id.*; Reply, Dalbert Decl. at 3.)

8        Petitioner cannot demonstrate prejudice, and his reasoning is flawed.

9 Even assuming the jury could infer from the check cashing card that Petitioner

10 was fraudulently cashing checks to support his habit, such an inference would

11 have helped Petitioner by providing him a source of funds and eliminating any

12 need to sell cocaine base.

13        **2.**    **Pager**

14        Petitioner argues that counsel should have introduced documentation that

15 his pager was not activated, which would have refuted the inference that he was

16 using it to receive pages about drug transactions. (Petition, Ex. A at 32; LD 2 at

17 38.)  Petitioner cannot show the requisite prejudice.  Officer Lewis testified that he

18 did not know if the pager was activated. (*Id.* at 57.)  Petitioner himself testified

19 that he had acquired the pager only three hours before his arrest. (*Id.* at 114-15.)

20 Even assuming the existence of documentation that Petitioner had not activated

21 the pager (and Petitioner does not identify any such documentation), such

22 evidence would be subject to rebuttal that Petitioner simply did not have the

23 opportunity to activate it.  Petitioner cannot establish a reasonable probability that

24 the result of the trial would have been different had his counsel introduced

25 documentation. *Strickland*, 466 U.S. at 694; *Williams*, 529 U.S. at 391.

26        **3.**    **Car Registration**

27        Petitioner argues that his counsel was deficient for failing to introduce

28 evidence of his car registration "to refute the government's allegation that, the

drugs were not stolen from roommate."[12] (Petition, Ex. A at 33.) As noted above, however, the prosecutor did not dispute that Petitioner stole the cocaine base from his roommate. (LD 2 at 164-65.) Petitioner cannot establish a reasonable probability that the result of the trial would have been different had his counsel introduced the car registration. *Strickland*, 466 U.S. at 694; *Williams*, 529 U.S. at 391.

### 4. Apartment Key

Again, Petitioner argues that his counsel was deficient for failing to introduce the key to Petitioner's apartment "to prove that Petitioner did have a roommate to steal drugs from." (Petition, Ex. A at 33.) As noted above, however, the prosecutor did not dispute that Petitioner stole the cocaine base from his roommate. (LD 2 at 164-65.) Petitioner cannot establish a reasonable probability that the result of the trial would have been different had his counsel introduced the key. *Strickland*, 466 U.S. at 694; *Williams*, 529 U.S. at 391.

### 5. Clothes

Petitioner testified that he wore light blue shorts, a long white T-shirt, white socks and blue and white tennis shoes when he was arrested. (LD 2 at 114.) Petitioner argues that the clothes he wore on the day of his arrest were the type that "drug smokers, not drug dealers" wore. (Petition, Ex. A at 33.) According to Petitioner, introduction of the clothes into evidence would have refuted Officer's Lewis' testimony that Petitioner reached into "his waistband area shorts pockets" (LD 2 at 28) because the pockets are on the thighs. (Petition, Ex. A at 33-34.) However, given the marginal value of the clothing, Petitioner cannot establish a reasonable probability that the result of the trial would have been different had his

///

---

[12] According to Petitioner's brother Ian, he received a phone call from "Puck," whom Petitioner identified as his roommate Otis Simpson, in which Puck said he was holding Petitioner's car as ransom to get back $500 for the drugs Petitioner stole. (Petition, Ex. F.)

1  counsel introduced the clothing. *Strickland*, 466 U.S. at 694; *Williams*, 529 U.S.

2  at 391.

3             **6.**    **Baggies**

4        Petitioner argues that his counsel was deficient for failing to introduce into

5  evidence the baggies in their "original state" to prove that it was impossible for

6  Officer Lewis to tell what the object was "without further unwarranted inspection."

7  (Petition, Ex. A at 34.)  Even assuming that the evidence was available (and

8  Petitioner does not establish that it was), such evidence would not have helped

9  Petitioner.  As discussed above under Ground One, Officer Lewis testified that he

10  "felt a large bulk," did not know what it was, and asked Officer Cordova to remove

11  it for officer safety. (LD 2 at 29-30.)  Petitioner would not benefit from presenting

12  evidence corroborating Officer Lewis' testimony.  Petitioner cannot establish a

13  reasonable probability that the result of the trial would have been different had his

14  counsel introduced the baggies. *Strickland*, 466 U.S. at 694; *Williams*, 529 U.S.

15  at 391.

16             **7.**    **Investigator and Investigative Report**

17        Petitioner argues that his counsel was deficient for failing to call the

18  investigator as a witness and failing to introduce the investigator's report into

19  evidence.  However, even assuming admissibility of the report (and Petitioner

20  does not offer any theory of admissibility), Petitioner does not explain how the

21  report would have helped him. (Petition, Ex. A at 34, Ex. G.)  The investigation

22  was conducted "for the purpose of a hardship letter to the District Attorney." (*Id.*,

23  Ex. G.)  The report is generally unfavorable and concludes that "[t]he information

24  received from the defendant's family does not appear helpful in any way." (*Id.* at

25  4.)  Petitioner cannot establish a reasonable probability that the result of the trial

26  would have been different had his counsel introduced the investigative report.

27  *Strickland*, 466 U.S. at 694; *Williams*, 529 U.S. at 391.

28  ///

### 8.  Witness Affidavits

Petitioner argues that his counsel was deficient for failing to introduce affidavits from his relatives into evidence.[13]  (Petition, Ex. A at 34, Exs. C-F.) Petitioner cannot establish a reasonable probability that the result of the trial would have been different had his counsel introduced the affidavits regarding drug abuse and the stolen cocaine base for the reasons stated under Ground Four.  *Strickland*, 466 U.S. at 694; *Williams*, 529 U.S. at 391.

### 9.  Drug Counselor

Petitioner argues that his counsel was deficient for failing to introduce evidence from a drug counselor (prepared for sentencing) that Petitioner would be accepted into a program on the condition that he is willing to comply with rules, regulations and structure of the program.  (Petition, Ex. A at 34, Ex. H.) Petitioner's argument is that such evidence would prove drug use, methods of "ingestion," and usable amounts.  (Petition, Ex. A at 34.)  However, the prosecutor did not dispute that Petitioner was a drug addict or that 12.61 grams of cocaine constitutes a usable amount for purposes of the fourth element of the offense.  (LD 2 at 162 ("So we know the amount was sufficient for use for personal consumption for narcotic use.").)  Petitioner cannot establish a reasonable probability that the result of the trial would have been different had his counsel introduced evidence from a drug counselor for the reasons stated under Ground Four.  *Strickland*, 466 U.S. at 694; *Williams*, 529 U.S. at 391.

### 10.  Expert Testimony

Petitioner argues that his counsel was deficient for failing to introduce expert testimony regarding drug use, drug prices, methods of ingestion, and usable amoounts.  (Petition, Ex. A at 34.)  Again, however, the prosecutor did not dispute that Petitioner had a drug habit or that 12.61 grams of cocaine constitutes

---

[13]  The majority of affidavits were prepared for purposes of sentencing.  (LD 2 at 194-95; Petition, Exs. C-E.)

27

1   a usable amount.  (LD 2 at 162, 165.)  Petitioner's speculation that expert

2   testimony might have helped him is insufficient.  *See Grisby v. Blodgett*, 130 F.3d

3   365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is

4   not enough to establish prejudice.").  Petitioner cannot establish a reasonable

5   probability that the result of the trial would have been different had his counsel

6   introduced expert testimony.  *Strickland*, 466 U.S. at 694; *Williams*, 529 U.S. at

7   391.

8           **11.  Other Drug Cases**

9           Petitioner argues that his counsel was deficient for failing to introduce

10   evidence about prosecutions against celebrities and others.  (Petition, Ex. A at

11   35-36.)  Petitioner contends that such evidence would refute the prosecutor's

12   argument that the cocaine base was worth $1200.  (*Id.*)  There is no basis to

13   believe that evidence of other prosecutions would have been admissible in

14   Petitioner's case.  Moreover, Petitioner cannot establish a reasonable probability

15   that the result of the trial would have been different had the value of the cocaine

16   base been $500, $1200 or any other like amount.  *Strickland*, 466 U.S. at 694;

17   *Williams*, 529 U.S. at 391.

18     **F.    GROUND SIX: <u>Ineffective Assistance - Failure to Object</u>**

19           As outlined in Ground One, the clearly established federal law for

20   evaluating this claim is *Strickland*.  On August 14, 2003, after the trial court heard

21   arguments involving a *Romero*[14] defense motion to strike prior convictions, the

22   court sentenced Petitioner.  (LD 1 at 122-35; LD 2 at 194-203.)

23           Petitioner contends that in the following four instances his counsel failed to

24   object or refute misstatements during argument of the *Romero* motion.  First,

25   Petitioner argues that the prosecutor incorrectly stated that Petitioner "was

26   convicted of robbery in 1991 and served one year in state prison for that."  (LD 2

27   ───────────────

28       [14]  *People v. Superior Court (Romero)*, 13 Cal. 4th 497, 53 Cal. Rptr. 2d
     789 (1996).

                                28

at 196.)  However, Petitioner attaches evidence that he was convicted of second degree robbery based on a plea of nolo contendere and, in 1996, was sentenced to imprisonment for one year after revocation of probation for that offense. (Petition, Ex. K.)  Second, Petitioner argues that the prosecutor incorrectly stated that there were "five separate violations of parole following from 1995" (LD 2 at 196), when in fact he committed fewer than five violations.[15]  (Petition, Exs. K, L.) Third, according to Petitioner, the prosecutor incorrectly stated during the *Romero* hearing that Petitioner was incarcerated eight times for a 1987 conviction, the two robbery convictions in 1991 and 1995, and multiple parole revocations.  (LD 2 at 196.)  Fourth, according to Petitioner, the prosecutor incorrectly stated during the *Romero* hearing that Petitioner's current offense was "serious."[16]  (LD 2 at 197.) Petitioner concludes, without explanation or support, that these "multiple errors in the record" prejudiced him.  (Reply at 22.)

Petitioner has failed to demonstrate a reasonable probability of changing the court's sentencing decision.  The court expressly relied upon the probation report for Petitioner's convictions, incarcerations and violations of parole.  (LD 2 at 199.)  The court referred to "a number of violations of parole" in the report without giving a specific number.  In addition, the court did not categorize Petitioner's possession of cocaine base for sale as a serious offense.  The court characterized as "serious felony convictions" only Petitioner's two prior robbery convictions.  (*Id.* at 198.)  Petitioner has not shown any error in application of the Three Strikes Law.

---

[15]  The record is not clear as to the total number.  It appears that Petitioner's second conviction for robbery resulted in revocation of probation for the first robbery conviction.  (Petition, Ex. K.)  In addition, there appear to be three subsequent revocation hearings.  (Petition, Ex. L.)

[16]  Read in context, the prosecutor stated: "In this case, it was 12 grams of cocaine base, which is a significant amount, an amount for sales as the jury found.  It's a serious offense, although it does not amount to a violent felony, but that's the requirement for the three strikes law.  The requirement for the three strikes law as the Court knows is two prior serious felonies."  (LD 2 at 197.)

1    Petitioner's claim fails.

2    **G.    GROUND SEVEN:  <u>Ineffective Assistance - Probation Report</u>**

3    **<u>and Criminal History</u>**

4    As outlined in Ground One, the clearly established federal law for

5    evaluating this claim is *Strickland*.  Petitioner argues that his counsel was

6    ineffective in not objecting to or refuting the trial court's statements at the

7    sentencing hearing of August 14, 2003.  Petitioner's contentions have no

8    substance.

9    The court stated that Petitioner violated probation in 1994 (LD 2 at 199),

10   whereas Petitioner claims that probation was not formally revoked until 1996.

11   (Petition, Ex. A at 42.)  However, Petitioner does not dispute that the violation of

12   probation occurred, regardless of whether the court viewed the violation as taking

13   place on the date of the misconduct as distinguished from the date of the

14   revocation hearing.  (Petition, Exs. K, N.)  Petitioner argues that the court's

15   statement that Petitioner was not "outside of the intended three strikes sentencing

16   scheme" given "the circumstances of the prior offenses, and their violations,

17   subsequent violations, and the current offense" was wrong.  (*Id.*; LD 2 at 199.)

18   Petitioner also takes issue with the court's statement that Petitioner has had

19   "many opportunities . . . to combat the drug addiction and failed to do so."[17]

20   (Petition, Ex. A at 42; LD 2 at 199-200.)

21   Petitioner's conclusory statement that any errors were "prejudicial" is

22   insufficient.  (Petition, Ex. A at 43.)  Petitioner cannot establish that any

23   objections by his counsel would have had a reasonable probability of changing

24   the court's sentencing decision.  Petitioner's claim fails.

25

26

27        [17]  Although Petitioner testified to a drug problem since 1985 (LD 2 at 116-
     17), Petitioner cites only to events after his arrest in November 2001.  (Petition,
28   Ex. A at 42.)

30

# V.

## <u>RECOMMENDATION</u>

For the reasons discussed above, it is recommended that the District Court issue an Order (1) adopting this Report and Recommendation; and (2) directing that judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: February 6 , 2008

ALICIA G. ROSENBERG
United States Magistrate Judge

31

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to file Objections as provided in the Local Rules Governing Duties of Magistrate Judges, and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.